# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| JACKSONVILLE NORTH PULASKI SCHOOL DISTRICT | PLAINTIFF |
| VS. 4:20-CV-00256-BRW | |
| D.M. and K.M. Grandparents of A.B. | DEFENDANTS |

## ORDER

Pending is Plaintiff's Motion for Summary Judgment (Doc. No. 50). Defendants have responded and Plaintiff has replied.[1] For the reasons stated below, the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**I.  BACKGROUND**[2]

A.B. is a male student enrolled in the Jacksonville North Pulaski School District ("Plaintiff") at Bayo Meto Elementary School ("BMES"). He began attending kindergarten at BMES on August 20, 2019. Defendants D.M. and K.M. are A.B.'s maternal grandparents and became his guardian on November 13, 2014. D.M. and K.M. are A.B.'s "parents" as defined under the Individuals with Disabilities Education Act ("IDEA").[3]

A.B. has been diagnosed with Sensory Processing Disorder ("SPD"), Attention Deficit Hyperactivity Disorder ("ADHD") combined type, and Autism Spectrum Disorder ("ASD"). A.B. also has a history of behavioral problems in school.

On April 23, 2019, Defendants went to BMES and registered A.B for kindergarten. During registration, Defendants presented a letter addressed to the principal requesting that A.B.

---

[1]Doc. Nos. 55, 56, 57, 62, 63.

[2]Unless otherwise noted, the Background is from the concise statements of undisputed material facts (Doc. Nos. 52, 57, 63).

[3]20 U.S.C. §§1400-1419.

1

be evaluated for special education services. In July 2019, Defendants provided BMES with an evaluation diagnosing A.B. with ADHD combined type.

On August 20, 2019, A.B. attended BMES for the first time. On that day, Defendants provided Principal Jones with another request for an evaluation of A.B. for special education services. The request advised that A.B. has a diagnoses of SPD and ADHD combined type, and that A.B. had been tested for ASD the previous day with those results available in three weeks.

On August 20, 2019, Plaintiff completed a Special Education Referral form. A Notice of Conference form was provided to Defendants. A conference was set for August 22, 2019 to consider a referral for special education and related services. At the conference Plaintiff(?) decided not to test at this time because there was no data to support academic deficits.

On September 5, 2019, Defendants provided a copy of an evaluation diagnosing A.B. with ASD to BEMS's principal. On September 6, 2019, Plaintiff held a meeting about 504 eligibility for A.B. A 504 plan was developed and it was determined that an occupational evaluation was needed.

A.B. was suspended for a total of twelve day from August 28, 2019, and October 7, 2019. When A.B. was nearing 10 days of suspensions, Plaintiff scheduled a disciplinary review hearing pursuant to Section 504. On September 20, 2019, Defendants appeared at the hearing with their attorney and requested an IDEA evaluation for A.B. Defendants asserted that if no IDEA evaluation occurred, they would proceed with a due process hearing.

On October 2, 2019, after the development of the 504 plan and the behavior intervention observation recommendations were put in place, Defendants received a discipline notice stating A.B. was being suspended out of school for four more days.

On October 7, 2019, Defendants filed a due process complaint against Plaintiff under the IDEA alleging that A.B. was denied a Free Appropriate Public Education ("FAPE"). The

Department of Education appointed a Hearing Officer ("HO") and the due process hearings were held on November 12, 13, 14, 22, and December 5, 2019. At the hearings, testimony was given by A.B.'s special education teacher, Plaintiff's supervisor of elementary principals and support services, Plaintiff's school psychology specialist, BMES's assistant principal, BMES' principal, a speech pathologist, an occupational therapist, A.B.'s classroom teacher, Plaintiff's occupational therapist, and A.B.'s maternal and paternal grandparents.

The HO determined that Plaintiff failed to provide A.B. a FAPE.[4] The HO found procedural violations occurred when Plaintiff failed to appropriately evaluate A.B. and engage in "child find" activities under the IDEA.[5] Additionally, the HO found that these procedural violations were substantive and caused a denial of the FAPE to A.B.[6]

The HO ordered Plaintiff to do the following:

(1) secure the services of a behavioral analyst,

(2) conduct a comprehensive evaluation to address all areas of suspected disabilities,

(3) use the services of the behavior analyst to provide expertise in the development and implementation of a behavior assessment and the subsequent development of a behavior support plan (BIP), if necessary and to provide any Plaintiff any training in the incorporation and implementation of the BIP in the IEP if the IEP is found necessary after all evaluations have been completed, and

(4) convene an IEP meeting after all evaluations have been completed to determine if A.B. is eligible for special educational services and develop an appropriate IEP.[7]

---

[4]Doc. No. 49, p. 121.

[5]*Id*.

[6]*Id*.

[7]*Id.* at 122.

Plaintiff filed this lawsuit appealing the HO's decision.[8] Defendants counterclaimed for damages and reasonable attorney's fees under the IDEA claiming discrimination and retaliation.[9] Plaintiff now seeks summary judgment.[10]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[11] Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings.[12] Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial.[13] When considering a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party.[14] Additionally, the evidence is not weighed, and no credibility determinations are made.[15]

---

[8]Doc. No. 10.

[9]Doc. No. 26.

[10]Doc. No. 50.

[11]See Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986).

[12]*Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).

[13]*Id.*

[14]*Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).

[15]*Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

4

## III. DISCUSSION

### A. IDEA Appeal

#### 1. Standard of Review

The IDEA permits a party seeking review of a state administrative decision to appeal to federal district court.[16] "In conducting that review, the court 'shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'"[17] In other words, the reviewing court must rely on the administrative record and hear additional evidence only at the request of a party. "Judicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact."[18]

"Because judges are not trained educators, judicial review under the IDEA is limited."[19] While the reviewing court must make a *de novo* determination as to whether the student was denied a FAPE, "due weight" must be afforded the administrative decision.[20] This is because the HO had "an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own educational policy for those of the school authorities that they review."[21]

---

[16] 20 U.S.C. § 1415(i)(2)(A).

[17] *Independent School Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 560 (8th Cir. 1996) (quoting 20 U.S.C. § 1415(e)(2)).

[18] *Id.* at 561.

[19] *E.S. v. Independent School Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998).

[20] See, *e.g.*, *T.F. v. Special Sch. Dist. of St. Louis Cty.*, 449 F.3d 816, 818 (8th Cir. 2006).

[21] *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 636 (8th Cir. 2003) (quotations omitted).

So, the standard of review, here, is less [more or less?] deferential than the traditional substantial evidence standard used in reviewing other administrative decisions. Additionally, the party challenging the outcome of the state administrative hearing bears the burden of proof.[22]

2. **Applicable Law**

A disabled child is one who (1) possesses an intellectual disability, one of several listed physical impairments, a speech or language impairment, autism, or a learning disability, and (2) requires special education services because of that impairment.[23] Plaintiff contends A.B. fails to satisfy the second prong because he showed no academic deficiencies.[24] Plaintiff also challenges the HO's conclusion that A.B. required further evaluation to determine whether he warranted special education services.[25] Plaintiff contends that the steps it took to address A.B.'s behavioral issues met IDEA requirements.[26]

"[E]ither a parent of a child, or a State educational agency, other State agency, or local educational agency may initiate a request for an initial evaluation to determine if the child is a child with a disability."[27] "Once a child is identified as potentially having a disability, the child's District 'shall conduct a full and individual evaluation to determine whether the child has a disability.'"[28] Federal regulations require school districts to use "a variety of assessment tools

---

[22]*E.S.*, 135 F.3d at 569; *Board of Educ. of Community Consolidated Sch. Dist. No. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 716 (7th Cir. 1991).

[23]20 U.S.C. § 1401(3)(A).

[24]Doc. No. 50, p. 2.

[25]*Id.* at 2-3.

[26]*Id.* at 2.

[27]20 U.S.C. § 1414(a)(1)(B).

[28]*Independent School District No. 413, Marshall v. H.M.J. ex rel. A.J., M.N.*, 123 F. Supp.3d 1100, 1108 (D. Minn. 2015) (quoting 20 U.S.C. § 1414(a)(1)(A)) (emphasis added).

and strategies to gather relevant functional, developmental, and academic information about the child" and expressly prohibit the use of "any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child."[29]

There is also a strong preference for educating children in the least restrictive environment, requiring children with disabilities to be placed in a regular educational environment to the greatest extent possible.[30] "[C]hildren who can be mainstreamed should be mainstreamed, if not for the entire day, then for part of the day."[31]

### 3. Administrative Decision

It is undisputed that A.B. has educational needs beyond those of other students, which is why he has a 504 plan.[32] The key issue is whether the HO erroneously ordered further evaluation of A.B. for special education services.

The HO found that Plaintiff committed substantive procedural violations when it denied Defendants' requests for special education evaluations on April 23, 2019 and August 20, 2019.[33] No evaluation occurred after the April 23 request.[34] A referral conference was held after the August 20 request, but the HO found that Plaintiff failed to include qualified personnel in the meeting to explain the psychological and occupational evaluations that Defendants provided.[35]

---

[29] 34 C.F.R. §§ 300.304(b)(1), (2).

[30] 20 U.S.C. § 1412(a)(5)(A).

[31] *Evans v. Dist. No. 17 of Douglas Cty., Neb.*, 841 F.2d 824, 832 (8th Cir. 1988).

32

[33] Doc. No. 49, p. 117.

[34] *Id.*

[35] *Id.*

The HO concluded that Plaintiff failed to fulfill its "child find" obligation because Defendants presented it with multiple diagnoses that indicated A.B.'s potential disability, but Plaintiff failed to make the required evaluations under the IDEA.[36] The HO reasonably concluded that missing twelve days of classroom instruction in the first few weeks of school because of his behavioral issues could be related to his diagnosed conditions and warrant further testing.[37]

The HO did not find that A.B. is "disabled." While the decision acknowledges that A.B. has been diagnosed with ASD, a listed impairment under the IDEA, ADHD combined, and SPD, it does not order special education services because of these impairments. The HO did not find that A.B.'s 504 accommodation plan is insufficient to meet his educational needs. Instead, the HO found that A.B. was denied a FAPE when Plaintiff violated its procedural obligations under the IDEA. The HO ordered that A.B. be further evaluated with the appropriate procedures in place.

4.   **Analysis**

Plaintiff has not shown by the preponderance of the evidence that the HO's findings are erroneous. Moreover, there is sufficient evidence in the record to support the HO's findings. Therefore, the decision must be affirmed.

The witnesses who testified at the due process hearing concerning A.B.'s academic ability unanimously concluded he did not show any shortcomings in academics. For example, his teacher, Mrs. Hillman, testified that A.B. was "very smart, he is very bright . . . overall, I

---

[36]*Id.*

[37]*Id.*

mean, he is a great little boy."[38] She also testified that "[A.B.] is doing great in language arts. I believe on his interim report, which we just took home, he had mastered a lot of these skills on [his report card] that he hadn't the first nine weeks."[39] Additionally, BMES's special education teacher, Mrs. Lawrence, observed that in class A.B. was "very respondent to doing activities, to doing his work, he was very proud of his work, he was able to complete his work without redirection, he – and he did it correct."[40]

However, the relevant issue is whether their analyses were based on assessments and evaluations comporting with IDEA's procedural requirements. The HO thought not, and I agree.

Once Defendants presented evidence that A.B. might be disabled, Plaintiff was obligated to evaluate him under the IDEA. This did not occur. Plaintiff evaluated A.B. using "existing data and testing on A.B. provided by his grandparents", but did not conduct the necessary independent evaluations.[41] Further, the evidence suggests that Plaintiff erroneously relied solely on a "lack of data supporting any deficits in academics" to conclude A.B. did not require testing for special education.[42] The applicable federal regulation expressly prohibits the use of "any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child."[43] The testimony in the record indicates that Plaintiff narrowly focused on A.B.'s academic ability

---

[38]*Id.* at 1392-93.

[39]*Id.* at 1403-04.

[40]*Id.* at 0180-181.

[41]Doc. No. 52, p. 6.

[42]Doc. No. 52, p. 6.

[43]34 C.F.R. § 300.304(b)(2).

without considering the overall effect that his diagnosed conditions were having on his education.

Because of these procedural problems identified by the HO, it is unclear whether A.B. was adequately evaluated for special education services as required by IDEA. Therefore, the HO correctly ordered additional testing.

Again, the HO's decision does not necessarily contradict the opinions of expert witnesses who believe that A.B. does not require special education services, nor does it, assume that all children diagnosed with his particular disabilities automatically require special education. It does not necessarily require Plaintiff create an IEP for A.B. It does not violate the express goal of the IDEA that children with disabilities be placed in the least restrictive environment. Rather, a careful reading of the decision shows that the HO was not convinced that adequate testing had taken place. This lack of testing prevented Plaintiff from determining whether A.B. is disabled under IDEA.

Accordingly, the motion for summary judgment on Plaintiff's IDEA appeal is denied. The HO's decision is affirmed.

### B. 504 Discrimination and Retaliation Claims

Defendants filed a counterclaim against Plaintiff for violations of section 504 of the Rehabilitation Act of 1973.[44] Defendants contend Plaintiff emotionally harmed A.B. in bad faith or with gross misjudgment. Additionally, Defendants contend Plaintiff unlawfully retaliated against them for asserting their rights under the IDEA and Section 504.

Plaintiff seeks summary judgment because it argues (1) Defendants failed to exhaust their administrative remedies on this claim, (2) Defendants do not have standing to pursue the claim,

---

[44] 29 U.S.C. section 794(a).

and (3) Defendants have failed to show a genuine dispute of material fact regarding Plaintiff's intent. In response, Defendants argue that they have already exhausted their IDEA administrative remedies because they litigated the same facts at the due process hearing relevant to their discrimination and retaliation claims.

The relevant provision of the IDEA provides that, before the filing of a civil action under Rehabilitation Act, where the civil action seeks "relief that is also available under this subchapter [of the IDEA], the procedures under subchapters (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."[45]

After review of the HO's final decision and order, Defendants did not exhaust any claims relating to discrimination or retaliation. Instead, the issues before the HO only included whether Plaintiff denied A.B. a FAPE. Nothing in the record indicates that Defendants properly raised a discrimination or retaliation claim during the due process hearing. Therefore, Defendants did not exhaust their administrative remedies on these claims, as required by law.[46] Additionally, Defendants failed to show "bad faith" or "gross misjudgment" by Plaintiff.

Accordingly, summary judgment is granted to Plaintiff on Defendants' counterclaims, except as to the issue of attorney's fees. Defendants may make a separate motion for an award of fees that includes a detailed description of the work performed in this case.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Summary Judgment (Doc. No. 50) is DENIED as to the IDEA appeal and GRANTED as to

---

[45] 20 U.S.C. § 1415(l).

[46] *J.M. ex rel. McCauley v. Francis Howell School District*, 850 F.3d 944, 947 (8th Cir. 2017).

Defendants' counterclaims, except as to the issue of attorney's fees. The hearing officer's decision is affirmed. The case is dismissed with prejudice.

IT IS SO ORDERED this 21st day of May, 2021.

<u>Billy Roy Wilson</u>
UNITED STATES DISTRICT JUDGE